UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHOINE WHITE,

      Plaintiff,

                                          Case No. 1:24-cv-1098

v.

                                          Hon. Hala Y. Jarbou

CITY OF BENTON HARBOR,
et al.,

      Defendants.

_____/

## OPINION

Plaintiff Johoine White brought this action against the following Defendants: the City of Benton Harbor; Berrien County; Officers Steve Bobo, David Willson, and Robert Shepherd;[1] Attorney Jennifer Fields; and at least one unknown police officer.   Before the Court are motions to dismiss filed by Defendants Fields (ECF No. 10) and Berrien County (ECF No. 13).   For the reasons herein, the Court will grant the motions.

### I. BACKGROUND

**A. White's Allegations**

According to the complaint, in 1999, White suffered a workplace injury that left him "disabled" due to chronic pain.  (Compl. 4, ECF No. 1.)  He used limb and back braces when riding public transportation and traveling to local businesses.  On November 12, 2021, as he was walking down Pavone Avenue near his home in Benton Harbor, Michigan, he saw Officer Shepherd

---

[1] White spells Defendant Shepherd's name three different ways in the complaint.  The Court will use the spelling in state court records from White's criminal case.  *See People v. White*, No. 362136, 2023 WL 8294323, at *1 (Mich. Ct. App. Nov. 30, 2023).  That case stemmed from the arrest by Defendants that is at issue here.  Similarly, the Court will use the spelling of Defendant Willson's name that is in the Michigan Court of Appeals opinion rather than the spelling in White's complaint.  *See id.*

holding a taser pointed at him.  (*Id.* at 5.)  White was surprised by this, so he responded with sarcasm; he asked whether Shepherd "wanted to perform fella[t]io on him."  (*Id.*)  Shepherd said "no" and called for backup.  (*Id.*)

White was holding a utility knife that he "showed" to Shepard while the two of them were still "a significant distance away from each other."  (*Id.*)  At about that time, Officer Willson also approached White.  Noticing Willson, White felt "surrounded" by the officers and became agitated.  (*Id.* at 6.)  The officers told White that they wanted to speak with him, but they did not say why.

White continued walking and saw additional officers arrive in the area, including Defendant Bobo.  They were all focused on White.  One officer, whose name is unknown, held a shotgun and pointed it at White.  (*Id.* at 8.)  Meanwhile, Shepherd continued to point his taser at White.  White asked why Bobo was following him.  Bobo did not respond.

White decided to cross the street and head back toward his house.  At that point, Willson asked, "Hey, what's going on today, man?"  (*Id.* at 7.)  White responded, "Too much, every day."  (*Id.*)  Shepherd again asked to speak with White, but White said he was not interested.  As the officers continued to follow White, he told them "F*** you" and to "perform fella[t]io on him," i.e., "S*** my d***."  (*Id.* at 8.)  He also told them to stop following him and made it clear that he did not want to speak with them.  For instance, he told the officer pointing the gun to "either shoot or stop following him."  (*Id.* at 10.)

White feared that continuing to possess his knife would give the officers reason to injure him, so he attempted to throw it away.  (*Id.* at 11.)  However, Officer Willson told White "not to reach for anything" and then fired his taser at White.  (*Id.*)  The taser did not affect White because it connected with his heavy winter coat.  White then used his knife to cut the taser cord.  Seeing

this, the officers allegedly turned off their body cameras and "rushed" White.  (*Id.*)  Meanwhile, White threw his knife away from him so that the officers could not claim he was using it on them.

The officers tackled White and pushed him to the ground, causing his head to hit the concrete.  The officers laid on top of White, rolled him over onto his stomach, and then pulled him up by his arms.  White alleges that these actions exacerbated his preexisting pain conditions.  White was taken to Berrien County Jail where he allegedly suffered other injuries.

White claims that his entire encounter with the police "occurred and culminated because he was simply walking and existing while disabled and Black, when he refused an unsubstantiated Police interaction."  (*Id.* at 10.)  He contends that the officers were aware of his "fragile mental state and disabilities" because they stated several times that he is "slow" and "has problems." (*Id.*)

According to court records, White was charged and convicted of three counts of assault with a dangerous weapon, Mich. Comp. Laws § 750.82(1), and three counts of resisting or obstructing a police officer, Mich. Comp. Laws § 750.81d(1).  *See White*, 2023 WL 8294323, at *1.  The evidence at trial included bodycam footage of White's interactions with the officers.  *Id.* That evidence showed that he "repeatedly refused to comply with the officers' lawful requests to get out of the intersection, he drew a boxcutter when asked to move, he drew the knife despite commands not to do so, and he brandished the boxcutter when asked to drop it."  *Id.* at *3.  White, however, alleges that "he was only guilty of speaking disrespectfully to police officers after being treated disrespectfully by them when they drew their weapons without cause and forced an unwanted interaction."  (Compl. 20.)  He contends that the public defender who represented him, Defendant Fields, "sabotaged his defense and collaborated with the prosecution."  (*Id.* at 14.)  She refused his request to use "exculpatory video evidence" showing that he did not initiate the

3

interaction with the police officers.  (*Id.*)  And she allegedly asked the officers leading questions that elicited answers she knew were not true.

The trial court sentenced White to 120 days in jail.  *White*, 2023 WL 8294323, at *1.  The Michigan Court of Appeals affirmed his conviction.  *Id.* at *4.  After his release from jail, he allegedly filed a complaint against the officers with the "Director of Public Safety," but he never heard a response.  (Compl. 21.)

**B. White's Claims**

Based on the foregoing, White asserts nine claims, five of which are against either Berrien County or Defendant Fields.  For instance, in Count V, White claims that Fields was part of a conspiracy with Officers Shepherd, Willson, Bobo, and the unknown officer to violate White's civil rights by agreeing to "initiate false charges and . . . to prosecute [White]."  (*Id.* at 36.)  He relies on 42 U.S.C. §§ 1981(c), 1983, 1985(3), and 1986 as the basis for this claim.

In Count VI, White claims that the County and the four police officers violated his right to travel under the U.S. Constitution.

In Count VII, White claims that all Defendants (including Berrien County and Fields) violated Title II and Title VI of the Civil Rights Act when they "intentionally denied [White's] requests for his proper medication dosage, refused to provide accommodations for his mobility issues, and denied him medical attention for the injury caused by the lack of accommodations because of his race."  (*Id.* at 43-44.)

In Count VIIB,[2] White contends that all Defendants discriminated against him in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132 et seq., when they "refused him

---

[2] White asserts two counts that are both labelled "Count VII"; for clarity's sake, the Court will refer to the second one as Count VIIB.

the regular common treatment of a normal inmate, denied him accommodations for his disabilities, and refrained from performing the normal execution of services to [him] because he is a disabled Black American." (*Id.* at 45-46.)  White alleges that he informed staff at the Berrien County Jail of his "physical health disabilities and limitations," and they denied him his "proper medication" and "accommodations transporting his belongings through the jail." (*Id.* at 47.)  He alleges that Defendants had "wheelchairs and carts available" but they refused to allow White to use them. (*Id.*)  Jail staff ordered White to "carry his own tote," but he was unable to do so "because of his disability and injuries." (*Id.* at 13.)  He had to "drag[] the tote and mattress as best he could, but could not get inside the elevator fast enough, and the guard let the elevator close on his shoulder," aggravating his injuries. (*Id.* at 13-14.)  And when he moved "out of the elevator to his cell, [he] did not receive any medical attention for his new injury." (*Id.* at 14.)

In Count VIII, White contends that all Defendants violated his rights under the Rehabilitation Act of 1973 (RA), 29 U.S.C. § 794(a), by instigating "an excessively violent encounter and arrest" and by denying him his medication and "mobility accommodations" at Berrien County Jail. (*Id.* at 48.)

### C. Procedural History

Defendants Fields and Berrien County have moved for dismissal of the claims against them under Federal Rule of Civil Procedure 12(b)(6).  White, who was represented by counsel at the time, responded to the motion filed by the County.  He did not respond to the motion filed by Fields.  Several months later, the Court suspended White's attorney from practice in this district and gave White an opportunity to retain new counsel. (5/28/2025 Order, ECF No. 28.)  White has indicated that he wishes to proceed without representation. (Pl.'s Resp. to Order, ECF No. 29.)

## II. STANDARD

A plaintiff's complaint must make a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The statement must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "[t]he plausibility standard . . . is not akin to a probability requirement . . . it asks for more than a sheer possibility" that the alleged misconduct occurred. *Id*. "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

When considering a motion to dismiss under Rule 12(b)(6), courts "construe the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true." *Parrino v. Price*, 869 F.3d 392, 397 (6th Cir. 2017). The Court need not accept "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678, or "formulaic recitations of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

Courts are generally bound to consider only the complaint when resolving a motion to dismiss under Rule 12(b)(6) unless the Court converts the motion to one for summary judgment. *Wysocki v. IBM Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). "However, a court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016) (internal citations omitted).

The Court cannot grant a motion to dismiss solely because the plaintiff fails to respond to the motion. *Carver v. Bunch*, 946 F.2d 451, 452 (6th Cir. 1991). "Whether or not the plaintiff responds, the district court's task remains the same—it must consider the allegations presented in

the complaint." *Afshari v. Montana Black Gold*, No. 20-5362, 2020 WL 9217980, at *2 (6th Cir. Dec. 17, 2020).

### III. ANALYSIS

#### A. Defendant Fields

##### 1. Count V – Conspiracy

White relies on several statutes as the basis for bringing a claim that Fields conspired with the officers to prosecute him.

###### (a) 42 U.S.C. § 1983

Section 1983 permits a plaintiff to bring suit against state actors, i.e., individuals acting "under color of" state law.  *See* 42 U.S.C. § 1983.  Fields contends she is not a state actor subject to suit under § 1983.  Indeed, as a general matter, "public defenders are not state actors against whom claims can be asserted under § 1983." *West v. Lambert*, 3 F. App'x 440, 441 (6th Cir. 2001) (citing *Polk County v. Dodson*, 454 U.S. 312, 318 (1981)).  A public defender has a "professional responsibility that mandate[s] his exercise of independent judgment on behalf of the client." *Polk County*, 454 U.S. at 321.  In addition, the State has a "constitutional obligation . . . to respect the professional independence of the public defenders whom it engages." *Id.* at 321-22.  Because of their independence from the State, "public defender[s] do[] not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Id.* at 325.

Here, the bulk of White's allegations against Fields center on her role as his legal representative during his criminal proceedings.  He contends she "sabotaged" his defense, refused to use exculpatory evidence at his trial, and asked witnesses leading questions during the trial.  All of that conduct falls within the traditional functions of counsel.  Fields was acting on White's

behalf when she performed these acts; she was not acting for or on behalf of the State. Consequently, White fails to state a claim under § 1983 for that conduct.

White also claims that Fields conspired with the officers to bring charges against White. That conduct, which presumably occurred before Fields represented White, could conceivably count as state action.  However, White's conspiracy claim is wholly conclusory.

"Civil conspiracy under § 1983 requires evidence of 'an agreement between two or more persons to injure another by unlawful action.'"  *Boxill v. O'Grady*, 935 F.3d 510, 519 (6th Cir. 2019) (quoting *Memphis, Tenn. Area Local, Am. Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004)).  "The plaintiff must plead enough facts to support a reasonable inference 'that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.'"  *Id.* (quoting *City of Memphis*, 361 F.3d at 905).  White has not alleged any facts suggesting a single plan by the alleged conspirators or any acts taken by them in furtherance of such a conspiracy.  Accordingly, he fails to state any claim against Fields under § 1983.

### (b) 42 U.S.C. § 1981

Section 1981 guarantees individuals "the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens."  42 U.S.C. § 1981(a).  "In order to establish a claim for racial discrimination under section 1981, a plaintiff must plead and prove that (1) he belongs to an identifiable class of persons who are subject to discrimination based on their race; (2) the defendant intended to discriminate against him on the basis of race; and (3) the defendant's discriminatory conduct abridged a right enumerated in section 1981(a)."  *Amini v. Oberlin Coll.*, 440 F.3d 350, 358 (6th Cir. 2006).

In addition to an absence of facts suggesting a conspiracy between Fields and the police officers, White's complaint contains no facts from which to plausibly infer that any Defendant, let alone Defendant Fields, intended to discriminate against him on account of his race.  Thus, he does not state a claim under § 1981.

### (c) 42 U.S.C. § 1985

Section 1985(3) "prohibits a conspiracy 'for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws.'"  *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 314 (6th Cir. 2005) (quoting 42 U.S.C. § 1985).  To prevail under this statute, a plaintiff must demonstrate "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States."  *Id.* (quoting *Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir. 2003)).  The second element "means there must be some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions."  *Id.* (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).

As indicated, White alleges no facts suggesting either a conspiracy or an invidiously discriminatory animus behind Defendants' actions, so he does not state a claim under § 1985.  Furthermore, § 1985 does not apply to disability-based discrimination.  *Post v. Trinity Health-Michigan*, 44 F.4th 572, 580 (6th Cir. 2022).  It "applies only to conspiracies targeting individuals based on classifications—like race or religion—that receive heightened scrutiny under the Equal Protection Clause."  *Rives v. Univ. of Tenn.*, No. 24-5336, 2024 WL 5103829, at *5 (6th Cir. Dec. 13, 2024).  He does not allege facts supporting such a conspiracy, so he does not state a claim under § 1985.

**(d) 42 U.S.C. § 1986**

"Section 1986 establishes a cause of action against anyone, who has knowledge of a conspiracy under § 1985, and 'having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do.'" *Radvansky*, 395 F.3d at 314 (quoting 42 U.S.C. 1986). "But '[w]here plaintiff has stated no cause of action under § 1985, no cause of action exists under § 1986." *Id.* at 315 (quoting *Braley v. City of Pontiac*, 906 F.2d 220, 227 (6th Cir. 1990)). Because White does not state a claim under § 1985, he does not state a claim under § 1986.

### 2. Count VII – Title II and Title VI of the Civil Rights Act

Title II of the Civil Rights Act prohibits discrimination on the basis of race, color, religion, or national origin in places of public accommodation. 42 U.S.C. § 2000a(a). Title VI of the Civil Rights Act provides that "[n]o person . . . shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. White's complaint contains no allegations supporting an inference of improper discrimination, let alone discrimination in a place of public accommodation or discrimination under a program or activity receiving federal financial assistance. Indeed, his allegations do not identify either a place of public accommodation or a federally-funded program or activity to which he was denied access or benefits. Thus, he does not state a claim under either of those statutes.

### 3. Count VIIB - ADA

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. White does not state such a claim against Fields because Title II of the ADA does not impose liability on individuals. *Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009); *Lee v.*

*Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004).  In addition, although White names Fields as a defendant to his ADA claim, he alleges no facts from which to infer that she did anything that discriminated against White, or that denied him the services of a public entity, on account of his disabilities.  She was not involved in his arrest, and there is no indication that she was involved in any decisions regarding any medications or accommodations he could have received at the jail.  Thus, White does not state a claim against her under the ADA.

### 4. Count VIII – RA

White's RA claim against Fields fails for reasons similar to those discussed above.  The RA provides that a qualified individual with a disability shall not, "solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).  Like the ADA, the RA does not impose liability on individuals.  *Lee*, 104 F. App'x at 493.  Moreover, White does not allege that Fields excluded him from, or denied him the benefits of, a program receiving federal funds.  Thus, he does not state a claim against her under the RA.

For all the foregoing reasons, White does not state a claim against Defendant Fields.  Consequently, the Court will dismiss her as a defendant.

### B. Defendant Berrien County

#### 1. Count VI – Right to Travel

White claims that Berrien County and the officer defendants violated his constitutional right to travel.  Berrien County correctly notes that the sole statutory basis for asserting a violation of the Constitution is 42 U.S.C. § 1983.  White cannot rely on the Constitution alone, as he appears to do in Count IV of his complaint.  The County urges the Court to dismiss this claim on that basis, but the Court declines to do so.  The purpose of a complaint is to provide notice to the defendants

11

of the nature of plaintiff's claims.  It was not necessary for White to cite § 1983 in Count VI because the County already knows the legal basis for asserting such a claim.

That said, the County is correct that this claim is deficient because it does not implicate the County in any way.  White apparently believes that Defendants impaired his right to travel by stopping and arresting him.  But White does not allege that the County had any involvement in that episode.  According to the complaint, the officers who made the arrest worked for the City of Benton Harbor.  (*See* Compl. 4 (referring to the officers as "Benton Harbor Police Officers").) Thus Count VI does not state a claim against the County.

### 2. Count VII – Title II & Title VI of the Civil Rights Act

For the reasons discussed above with regard to Defendant Fields, White does not state a claim against any Defendant under Title II or Title VI of the Civil Rights Act.

### 3. Counts VIIB, VIII – ADA & RA

Unlike Defendant Fields, Berrien County plausibly had some role in, or responsibility for, controlling the medications and accommodations that White could have received while incarcerated at the Berrien County Jail.  However, White fails to state a claim against the County because his allegations are vague and conclusory.  It is not at all clear what qualifying disabilities White suffers from, what he told the officials about his disabilities and needs, what medications or accommodations he required that he did not receive, or how the denial of any accommodations excluded him from, or subjected him to discrimination under, any program or activity of the Berrien County Jail.

In addition, a significant part of White's ADA and RA claims rests on his assertion that Defendants did not provide him with necessary medication and medical treatment.  Though his complaint is unclear, he appears to be referring to the need for treatment of his pain or of injuries he sustained during his arrest. But White does not allege any basis for concluding that jail officials

withheld such treatment because of his disabilities.  Instead, he simply alleges that he did not receive that treatment.  That claim "necessarily sounds in medical malpractice, which, 'by itself, does not state a claim under the ADA.'"  *Powell v. Columbus Med. Enters., LLC*, No. 21-3351, 2021 WL 8053886, at *2 (6th Cir. Dec. 13, 2021) (quoting *Jones v. Willie*, No. 15-5658, 2016 U.S. App. LEXIS 23617, at *8 (6th Cir. Jan. 28, 2016)).  "[T]he law is well-settled that claims made under the ADA, the Rehabilitation Act, or the other discrimination-based statutes generally cannot be based on medical treatment decisions concerning the alleged medical needs of allegedly disabled prisoners."  *Reed v. Correct Care Sols.*, No. 20-11523, 2023 WL 3168658, at *3 (E.D. Mich. Apr. 28, 2023) (collecting cases).  Thus, White does not state a claim against any Defendant under the ADA or RA.

## IV. CONCLUSION

In summary, White fails to state a claim against Defendants Fields and Berrien County. The Court will grant their motions and dismiss them from the case.

The Court will enter an order that is consistent with this Opinion.

Dated: September 9, 2025

/s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE