UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHOINE WHITE,

      Plaintiff,

                                      Case No. 1:24-cv-1098

v.

                                      Hon. Hala Y. Jarbou

CITY OF BENTON HARBOR,
et al.,

      Defendants.

_____/

## OPINION

Plaintiff Johoine White brought this civil rights action against the City of Benton Harbor and Benton Harbor Public Safety Officers Steve Bobo, David Willson, and Robert Shepherd.[1] Before the Court is Defendants' motion for summary judgment (ECF No. 47). White has not responded to the motion. For the reasons herein, the Court will grant the motion.

### I. BACKGROUND

#### A. Evidence

According to the complaint, on November 12, 2021, White was walking down Pavone Avenue near his home in Benton Harbor, Michigan, when Defendants approached him. According to Willson's police report, an individual had called the police to report that an "unknown black male, wearing dark clothing, [was] standing in the middle of the road." (Willson Rep., ECF

---

[1] White spells Defendant Shepherd's name three different ways in the complaint. The Court will use the spelling in state court records from White's criminal case. *See People v. White*, No. 362136, 2023 WL 8294323, at *1 (Mich. Ct. App. Nov. 30, 2023). That case stemmed from the arrest by Defendants that is at issue here. Similarly, the Court will use the spelling of Defendant Willson's name that is in the Michigan Court of Appeals opinion rather than the spelling in White's complaint. *See id.*

No. 47-2, PageID.591.)   The caller reported that she believed the individual "has mental issues." (*Id.*, PageID.594.)

Video from Willson's body camera shows that White was standing in the middle of an intersection when Willson arrived at the scene.  (Willson Bodycam 9:32:20, ECF No. 47-3.) Willson asked White to move out of the street and onto the sidewalk.  White refused to do so. Willson told him not to "reach for anything," but White reached into his pants pocket, removed a silver utility knife, and held it in the air. (*Id.* 9:32:26.)  In response, Willson unholstered his firearm and pointed it at White.  (*Id.* 9:32:28.)  Willson instructed White to drop the knife and to "get on the ground." (*Id.* 9:32:42.)  White did not comply.  Instead, he grabbed his crotch and repeatedly told Willson to "suck my dick." (*Id.* 9:32:58.)  Shortly thereafter, a passing vehicle slowly drove around White because he was in the road.

White started walking away from Willson, so Willson told him to stop moving and to put his hands in the air.  White ignored these directions, hurled insults and obscenities at Willson, and continued walking away.  White put his knife back into his pocket and then pulled it out again a few minutes later. (*Id.* 9:34:17.)  Sergeant Bobo and Detective Shepherd arrived around that time. Willson again directed White to put the knife down and to put his hands up but White did not comply.  As Bobo approached, White put his left hand out to keep Bobo away while holding the knife in his other hand.  (*Id.* 9:34:25.)

Willson then put his firearm away, pulled out his taser, and repeatedly told White to put the knife down. (*Id.* 9:34:40.)  White turned and walked away down the middle of the street.  The officers followed him.   White turned back around and asked Bobo if he was "ready to die." (*Id.* 9:35:00.)  He told Bobo to quit following him.  Willson warned White that he would be tased. White did not comply with any instructions, so Willson fired his taser at White.   The taser

projectiles appear to have struck White's winter jacket and the taser had no effect.  White cut the wires leading back to the taser and continued backing away while telling the officers that he was "ready to die." (*Id.* 9:35:44.)  White eventually moved onto the sidewalk but he held out his knife and warned the officers not to come within six feet of him.  (*Id.* 9:36:18.)  After several more minutes of White yelling at the officers and ignoring their commands to put the knife down, to put his hands up, or to get on the ground, Bobo and Shepherd grabbed White (one grabbed him from the front and the other grabbed his arms from behind) and pulled him to the ground onto his back. (*Id.* 9:39:06–9:39:18.)  Then they rolled him over and restrained him in handcuffs.

According to court records, White was charged and convicted of three counts of assault with a dangerous weapon, Mich. Comp. Laws § 750.82(1), and three counts of resisting or obstructing a police officer, Mich. Comp. Laws § 750.81d(1).  *See White*, 2023 WL 8294323, at *1.  The evidence at trial included the bodycam footage of White's interactions with the officers. *Id.*  That evidence showed that he "repeatedly refused to comply with the officers' lawful requests to get out of the intersection, he drew a boxcutter when asked to move, he drew the knife despite commands not to do so, and he brandished the boxcutter when asked to drop it."  *Id.* at *3.  The trial court sentenced White to 120 days in jail.  *Id.* at *1.  The Michigan Court of Appeals affirmed his conviction.  *Id.* at *4.

### B. White's Claims

White asserts nine claims.  In Count I, he contends that Defendants arrested him without reasonable suspicion or probable cause.

In Count II, he claims that Defendants used excessive force when pulling him to the ground.

In Count III, he claims that Defendants violated the Equal Protection Clause of the Constitution by investigating and arresting him due to his race.

3

In Count IV, he contends that Defendants violated the Equal Protection Clause by arresting and prosecuting him due to his race.

In Count V, White claims Defendants were part of a conspiracy to violate his civil rights by agreeing to "initiate false charges and . . . to prosecute [White]." (Compl. 36, ECF No. 1.) He relies on 42 U.S.C. §§ 1981(c), 1983, 1985(3), and 1986 as the basis for this claim.

In Count VI, White claims that Defendants violated his right to travel under the U.S. Constitution.

In Count VII, White claims that Defendants violated Title II and Title VI of the Civil Rights Act when they "intentionally denied [White's] requests for his proper medication dosage, refused to provide accommodations for his mobility issues, and denied him medical attention for the injury caused by the lack of accommodations because of his race." (Compl. 43-44.)

In Count VIIB,[2] White contends that Defendants discriminated against him in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132 et seq., when they "refused him the regular common treatment of a normal inmate, denied him accommodations for his disabilities, and refrained from performing the normal execution of services to [him] because he is a disabled Black American." (Compl. 45-46.) White alleges that he informed staff at the Berrien County Jail of his "physical health disabilities and limitations," and they denied him his "proper medication" and "accommodations transporting his belongings through the jail." (Id. at 47.) He alleges that Defendants had "wheelchairs and carts available" but they refused to allow White to use them. (Id.) Jail staff ordered White to "carry his own tote," but he was unable to do so "because of his disability and injuries." (Id. at 13.) He had to "drag[] the tote and mattress as best

---

[2] White asserts two counts that are both labelled "Count VII"; for clarity's sake, the Court will refer to the second one as Count VIIB.

he could, but could not get inside the elevator fast enough, and the guard let the elevator close on his shoulder," aggravating his injuries.  (*Id.* at 13-14.)  And when he moved "out of the elevator to his cell, [he] did not receive any medical attention for his new injury."  (*Id.* at 14.)

In Count VIII, White contends that Defendants violated his rights under the Rehabilitation Act of 1973 (RA), 29 U.S.C. § 794(a), by instigating "an excessively violent encounter and arrest" and by denying him his medication and "mobility accommodations" at Berrien County Jail. (Compl. 48.)

## II. STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  If the movant does not bear the burden of persuasion at trial, the necessary showing can be made by "submitting affirmative evidence that negates an essential element of the nonmoving party's claim," *Kava v. Peters*, 450 F. App'x 470, 473 (6th Cir. 2011) (cleaned up), or by "pointing out the lack of evidence to support an essential element" of that claim, *Rockwood Auto Parts, Inc. v. Monroe County*, 155 F.4th 557, 566 (6th Cir. 2025) (cleaned up).  The nonmovant must then present "sufficient evidence from which a jury could reasonably find in its favor."  *Davis v. Sig Sauer, Inc.*, 126 F.4th 1213, 1230 (6th Cir. 2025) (cleaned up).  Summary judgment is not an opportunity for the Court to resolve factual disputes.  *Id.*  The Court "must shy away from weighing the evidence and instead view all the facts in the light most favorable to the nonmoving party and draw all justifiable inferences in their favor."  *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 410 (6th Cir. 2021).

### III. ANALYSIS

#### A. Count I: False Arrest

White claims that the officers did not have probable cause to arrest him, but the undisputed evidence shows that he repeatedly defied lawful commands to move out of the street and to put his knife down.  He also assaulted the officers by brandishing his knife.  Indeed, a jury found him guilty of assaulting, resisting, and obstructing Defendants, which necessarily means that Defendants had probable cause to arrest him.  He does not contend that those convictions have been invalidated, so his claim is barred because a ruling in his favor "would necessarily imply the invalidity of his conviction or sentence." *See Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994).

#### B. Count II - Excessive Force

The Fourth Amendment protects "the right of the people to be secure in their persons . . . against unreasonable . . . seizures[.]"  U.S. Const. amend IV.  "A seizure is 'unreasonable' under the Fourth Amendment if officers used excessive force." *Puskas v. Delaware County*, 56 F.4th 1088, 1093 (6th Cir. 2023) (quoting *Gambrel v. Knox County*, 25 F.4th 391, 400 (6th Cir. 2022)). "In deciding whether the force used was excessive, [the Court] balance[s] the government's interests in protecting others (including the police) and curbing crime against a suspect's right to not . . . be injured." *Id.*

> Three factors are particularly relevant: (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether he was actively resisting arrest or attempting to evade arrest by flight.

*Id.* (cleaned up); *see Graham v. Connor*, 490 U.S. 386, 396 (1989).  "These factors are not an exhaustive list because the ultimate question is whether the totality of the circumstances justifies [the] particular sort of seizure that took place." *LaPlante v. City of Battle Creek*, 30 F.4th 572, 579 (6th Cir. 2022) (citations omitted).  "An officer's use of force 'must be judged from the

perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight,' given the fact that 'police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'" *Id.* (quoting *Graham*, 490 U.S. at 396–97).

Here, the totality of the circumstances justifies Defendants' actions. Defendants initially approached White because he was standing in the middle of an intersection. By standing in the roadway, he put himself at risk of harm from passing vehicles. When Defendants asked him to move, he refused to do so. As part of his response, he brandished a knife and threatened Defendants, yelling at them and asking if they were "ready to die." This assaultive conduct was a somewhat serious crime that justified White's arrest. It also put Defendants at risk of harm. Despite repeated commands to drop the knife, White kept the knife in his hand, requiring Defendants to use some additional force to secure White and disarm him while protecting themselves.

The force Defendants used was entirely reasonable. When White first pulled out his knife, Willson pointed a firearm at White and told him to get on the ground. White ignored Willson, so Willson later attempted to use a taser on White. The taser was not effective, so two officers pulled White to the ground on his back, rolled him over, and then put him in handcuffs. In short, White repeatedly ignored Defendants' lawful orders and threatened them with a knife. After a display of force and a taser failed to obtain White's compliance, Defendants grabbed him and pulled him to the ground. He offers no evidence to suggest that any of their actions were unreasonable. The evidence does not support his allegations that Defendants "laid on top of him while simultaneously demanding that he roll over," "violently flipped him over," or "pulled his arms straight up without

7

bending his elbows." (Compl. 13.)  Consequently, the Court will dismiss the Fourth Amendment claim.

### C. Counts III, IV - Equal Protection

White claims that Defendants violated his right to equal protection because they targeted him and arrested him due to his race.[3]  "An alleged victim must prove by 'direct, circumstantial, or statistical evidence, that he [or she] was a target of racial profiling.'"  *Von Herbert v. City of St. Clair Shores*, 61 F. App'x 133, 149 (6th Cir. 2003) (quoting *United States v. Saucedo*, 226 F.3d 782, 790 (6th Cir. 2000)).  "Mere speculation that police operatives had selected a suspect because of racial bias is inadequate to support a racial profiling charge." *Id.*

No evidence supports White's claim.  The undisputed evidence demonstrates that Defendants responded to a call about a "black male" with "mental issues" standing in the road, which is a civil infraction.  *See* Mich. Comp. Laws § 257.655 (prohibiting pedestrians from walking on the "main traveled portion of the highway" when "sidewalks are provided").  When Defendants arrived, White was standing in the middle of the road as reported.  He refused to comply with any orders and then threatened Defendants with a knife.  The foregoing circumstances caused Defendants to investigate and arrest White, not his race.

### D. Count V - Conspiracy

White relies on several statutes as the basis for bringing a claim that Defendants conspired to violate his rights.

---

[3] White is an African-American man.

### (a) 42 U.S.C. § 1983

To succeed on a conspiracy claim under § 1983, White "must first demonstrate a constitutional deprivation." *Bauss v. Plymouth Township*, 233 F. App'x 490, 496 (6th Cir. 2007). He has not made that showing, so his conspiracy claim fails.

### (b) 42 U.S.C. § 1981

Section 1981 guarantees individuals "the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a). "In order to establish a claim for racial discrimination under section 1981, a plaintiff must plead and prove that (1) he belongs to an identifiable class of persons who are subject to discrimination based on their race; (2) the defendant intended to discriminate against him on the basis of race; and (3) the defendant's discriminatory conduct abridged a right enumerated in section 1981(a)." *Amini v. Oberlin Coll.*, 440 F.3d 350, 358 (6th Cir. 2006). As discussed above, there is no evidence that Defendants discriminated against White on the basis of his race. Accordingly, his claim under § 1981 fails.

### (c) 42 U.S.C. § 1985

Section 1985(3) "prohibits a conspiracy 'for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws.'" *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 314 (6th Cir. 2005) (quoting 42 U.S.C. § 1985). To prevail under this statute, a plaintiff must demonstrate "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Id.* (quoting *Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir. 2003)). The second element "means there must be

9

some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." *Id.* (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).

Here, White provides no evidence that Defendants discriminated against him on account of his race, so his claim under § 1985 is meritless.

### (d) 42 U.S.C. § 1986

"Section 1986 establishes a cause of action against anyone, who has knowledge of a conspiracy under § 1985, and 'having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do.'" *Radvansky*, 395 F.3d at 314 (quoting 42 U.S.C. 1986). "But '[w]here plaintiff has stated no cause of action under § 1985, no cause of action exists under § 1986." *Id.* at 315 (quoting *Braley v. City of Pontiac*, 906 F.2d 220, 227 (6th Cir. 1990)).  Because White's claim under § 1985 fails, his claim under § 1986 fails as well.

### E. Count VI - Right to Travel

"[T]he Constitution protects the "right to travel locally through public spaces and roadways." *Johnson v. City of Cincinnati*, 31 F.3d 484, 498 (6th Cir. 2002).  But that right is not absolute.  It does not provide citizens with the right to use public spaces and roadways in any manner that they please. *See West v. Duncan*, 179 F. Supp. 2d 794, 803 n.5 (N.D. Ohio 2001) ("A police officer's enforcement of a valid traffic law is not a violation of the plaintiffs' right to travel.").  Defendants did not impair White's constitutional right to travel.  They asked him to move onto the sidewalk rather than remain in the middle of the road.  He could have used the sidewalk to travel to his destination, consistent with his right to travel.  Instead, he ignored Defendants' orders and then assaulted them with a knife, which led to his arrest.  Thus, Count VI is meritless.

10

**F. Count VII - Title II and Title VI of the Civil Rights Act**

Title II of the Civil Rights Act prohibits discrimination on the basis of race, color, religion, or national origin in places of public accommodation. 42 U.S.C. § 2000a(a). Title VI of the Civil Rights Act provides that "[n]o person . . . shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. The Court previously concluded that White "does not state a claim under either of those statutes." (9/9/2025 Op. 10, ECF No. 34.) Similarly, he provides no evidence from which to infer that Defendants discriminated against him in connection with a place of public accommodation or a program or activity receiving federal financial assistance. Indeed, White's allegations in support of his Title II and Title VI claims concern his treatment at the Berrien County Jail. There is no evidence that the remaining Defendants—the City of Benton Harbor and its officers—had any involvement in that treatment.

**G. Count VIIB - ADA**

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. White cannot pursue a claim for damages against the officers because Title II of the ADA does not impose liability on individuals. *Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009); *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004). In addition, he provides no evidence that Defendants discriminated against him on account of a disability. Like his Title II and Title VI claims, his ADA claim appears to be based on his treatment at Berrien County Jail, which has no logical connection to the City or to Defendants Bobo, Shepherd, or Willson.

**H. Count VIII – RA**

White's RA claim against Fields fails for reasons similar to those discussed above.  The RA provides that a qualified individual with a disability shall not, "solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).  Like the ADA, the RA does not impose liability on individuals.  *Lee*, 104 F. App'x at 493.  Moreover, White provides no evidence that Defendants discriminated against him because of a disability.

**I. City of Benton Harbor**

A municipality like the City of Benton Harbor may be held liable for the constitutional violations of its employees only where the municipality's policy or custom led to the violation. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694–95 (1978).  But White does not provide evidence of a constitutional violation by the individual officers, so the City is not liable under *Monell*.   *See Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) ("There can be no liability under Monell without an underlying constitutional violation.").  Thus, there is no claim against the City.

## IV. CONCLUSION

For the reasons discussed, White has not provided evidence that would create a genuine dispute of material fact as to any of his claims against the City of Benton Harbor or against its employees, Defendants Bobo, Willson, and Shepherd.  They are entitled to summary judgment, so the Court will enter an order granting their motion.

After dismissal of the foregoing defendants, the only remaining defendants are unidentified parties.  Despite an opportunity for discovery, White has not amended his complaint to identify those parties.  Consequently, the Court will also dismiss the unidentified defendants and enter a judgment dismissing the case.  *See Reilly v. Donnellon*, No. 19-11249, 2023 WL 1466821, at *1

12

(E.D. Mich. Feb. 2, 2023) (dismissing unidentified parties where the discovery process had ended and the plaintiff did not seek leave to name those parties in an amended complaint).

Dated: March 31, 2026                                    /s/ Hala Y. Jarbou
                                                         HALA Y. JARBOU
                                                         CHIEF UNITED STATES DISTRICT JUDGE